MINNIE WARNER METTLER *et al.* Defendants in Error, *vs.*
VESPASIAN WARNER *et al.* Plaintiffs in Error.

*Opinion filed February 16, 1910.*

1. WILLS—*rule against perpetuities has reference to time when the title vests.* The rule against perpetuities has reference to the time within which the title vests and has nothing to do with the postponement of the enjoyment or the duration of the title.

2. SAME—*interest beginning within time prescribed by rule is valid, without regard to its duration.* An interest which begins within lives in being and twenty-one years thereafter is not within the rule against perpetuities, although it may continue beyond the prescribed period.

3. SAME—*letters testamentary relate back to date of testator's death.* After a will is probated the letters testamentary revert back to the date of the testator's death and validate acts done by the executor in the line of his duty before he qualified.

4. SAME—*when vesting of a legal title is not postponed until after probate of will.* Where a will devises the testator's property to the executor in trust and directs that he shall take possession of the real estate devised to him immediately upon the testator's death, the fact that the will provides that he shall hold the same in trust for a period commencing at the testator's death and ending fifteen years after the first day of the next month of March "after the date when this my last will is admitted to probate," does not postpone the vesting of the legal title in the trustee but such title vests in him at the testator's death. (*Johnson* v. *Preston,* 226 Ill. 447, distinguished.)

5. SAME—*the law favors vesting of estates.* The law favors the vesting of estates, and in cases where the instrument is susceptible of two constructions the law inclines to favor the construction most favorable to the devisee or grantee rather than the construction which would be against his interest.

6. SAME—*remainder should be held vested if the enjoyment is postponed for convenience of estate.* Where a remainder is devised and the enjoyment thereof is postponed for the convenience and benefit of the estate and not for reasons personal to the devisee, the remainder should be held to be vested.

7. SAME—*devise of all proceeds and income is a devise of the land.* Where a will provides that the executor shall take immediate possession of the real estate devised and "manage, control, rent, cultivate, keep in repair and improve the same," and after

the expenses are paid the net proceeds and income from said real estate shall be paid to the children of the testator, or their descendants, in equal parts, *per stirpes* and not per capita, there is an express devise to the testator's children of all the proceeds and income of the land, which is a devise of the land itself.

8. Same—*when equitable interest of the beneficiaries is vested.* Where it is apparent from the entire testamentary scheme that the testator, in creating a trust, intended that the entire beneficial interest in his estate should vest in his children and the lineal descendants of such as might die before the period of distribution was reached, and there is nothing to indicate that the postponement of enjoyment was for reasons personal to any devisee but only for the advantage of the estate, the equitable interests of the beneficiaries will be held to be vested and not contingent; and a provision relating to survivorship in case of the death of any child will be regarded as a condition subsequent.

9. Same—*possibility that the trustee may prove recreant to his duty is not ground for holding trust invalid.* The fact that terms of a trust created by a will naming the testator's son as executor and trustee place the trustee in a position where he may advance his own interests to the injury of the other heirs by making an unfair division or partition of the property on distribution is not ground for holding the trust invalid, as against public policy.

10. Dower—*widow's dower in all lands need not be assigned in ʼone proceeding.* A widow who is entitled to dower in different parcels of land is not obliged to include all the lands in which she claims dower in one proceeding by her for the assignment of dower, and dower in lands not included in such proceeding may be assigned in a subsequent proceeding to partition the lands.

11. Same—*widow is entitled to dower though it may require a sale of land contrary to will.* If there is no provision in a will which is accepted by the widow in lieu of dower she is entitled to an assignment of dower even though it may require a sale of land contrary to the provisions of the will, as the rights of devisees must give way to the right of the widow to have dower assigned under the statute.

12. Same—*postponement of period of distribution to devisees does not postpone widow's right to dower.* The postponement of the period of distribution of lands among the devisees does not postpone the right of the widow to have dower assigned, where she has accepted no provision of the will in lieu of dower.

13. Same—*statute requiring widow's written assent to a sale of land is passed for her benefit.* The statute requiring the written assent by the widow to the sale of land in which she is en-

titled to dower is passed for the benefit of the widow, and alleged error in ordering a sale without such written assent and directing that the widow shall have dower in the proceeds cannot be availed of by others where the widow is not complaining.

14. PLEADING—*alleged former adjudication of dower should be set up by answer.* If a suit for the assignment of dower is relied upon as a bar to the assignment of dower in a subsequent partition proceeding, such alleged former adjudication should be set up and relied upon in the answer.

WRIT OF ERROR to the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

VESPASIAN WARNER, for himself.

HUGH CREA, and JOHN FULLER, for Vespasian Warner as executor and trustee, and Flora Warner McDermott.

FRED BALL, HERRICK & HERRICK, INGHAM & INGHAM, and UNDERWOOD & SMYSER, (ARTHUR W. UNDERWOOD, of counsel,) for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a bill in equity filed by Minnie Warner Mettler and Arabella Warner Bell against Vespasian Warner and Flora Warner McDermott for partition between them of the lands owned by John Warner, and praying for an assignment of dower to the widow, Isabella R. Warner, in said lands. The circuit court of DeWitt county granted the prayer of the bill and rendered a decree as therein prayed for. The defendants below have sued out this writ of error for the purpose of obtaining a review of said decree.

The main question involved arises out of the construction and validity of the last will and testament of John Warner. The testator lived for many years in the city of Clinton, said county, and died there on the 21st day of December, 1905. At the time of his death he was the

owner of real estate of the value of about $800,000 and personal property about equal in value to his real estate. The testator was married twice. By the first marriage two children survive the deceased,—the plaintiffs in error, Vespasian Warner and Flora Warner McDermott. About eight years after the death of his first wife the testator married Isabella R. Robinson, and of this marriage two children survived their father,—Arabella Warner (now Mrs. Bell) and Minnie Warner (now Mrs. Mettler.) Before his second marriage the testator and Isabella R. Robinson entered into an ante-nuptial contract. After the death of her husband his widow filed a bill for the purpose of having the ante-nuptial contract set aside and declared null and void. That case was finally adjudicated in this court, and the decree of the circuit court setting aside the ante-nuptial contract was affirmed, and the opinion of this court in that case is reported as *Warner* v. *Warner*, 235 Ill. 448. It was adjudicated in that case that the widow was entitled to her dower in all of the real estate belonging to her husband at the time of his death. After the commencement of the suit to set aside the ante-nuptial contract, and before it was finally terminated by the assignment of dower to the widow, the defendants in error commenced the present suit for partition, claiming that the will of John Warner was void and that his entire estate passed as intestate property to his four children, who are parties to this suit. So much of the will of John Warner as is necessary to a proper understanding and decision of the questions here involved is as follows:

"*Clause 3*—If my wife survives me and after my death ratifies, confirms and complies with and fully executes on her part the ante-nuptial contract mentioned in clause 2 above hereof, made and entered into by and between her and me on the 29th day of May, A. D. 1874, on the executor hereof, or his successors, paying or tendering her the balance of money, if any, then remaining unpaid her there-

on, I will, devise and bequeath to her in fee simple out-block twenty-eight (28) in the city of Clinton, DeWitt county, Illinois, now occupied by me as a homestead, the west half of the south-east quarter of section thirty-four (34), in township twenty (20), north, range two (2), east of the third P. M., in said county, and all my right, title and interest in and to what was the home farm of her father, containing two hundred and twenty-three (223) acres, more or less, in Fairfield township, Huron county, in the State of Ohio; but the above bequests in this clause mentioned are made on the express condition that my wife survives me and after my death ratifies, confirms and complies with and fully executes on her part said ante-nuptial contract, on the executor hereof, or his successors, paying or tendering her the balance of money, if any, then remaining unpaid her thereon.

"*Clause 4*—I give, grant, devise and bequeath to the executor hereof, my son, Vespasian Warner, and to his successors, subject to the conditional bequests mentioned in clause 3 above hereof, and subject to all just demands against me or my estate, and subject to all just demands, interests, titles and estates, if any, my wife, in case she survives me, may be held to have thereon or therein as my widow, all the property and estate, real, personal and mixed, moneys, bonds, notes, rights, credits, demands, choses in action, and of whatever kind or nature, owned by me or which I may be entitled to at the time of my death, in fee simple, but in trust for the purposes herein specified and none other.

"*Clause 6*—I will and direct that said executor, immediately upon my death, take possession of the real estate above devised to him, and that he, and his successors after him, for and during a term commencing at my death and ending fifteen (15) years after the first day of the next month of March after the date when this my last will and testament is admitted to probate, manage, control, rent, cul-

tivate, keep in repair and improve the same as he or they may deem advisable, and out of proceeds thereof and income therefrom pay all costs and expenses of the same and all charges, taxes and assessments thereon and the costs and expenses of administering the estate, and each year during said term pay the net proceeds and income of and from said real estate, after paying said costs, expenses, charges, taxes and assessments, to my said children or their descendants, in equal parts, *per stirpes* and not per capita.

"*Clause 7*—I will and direct that in case either or any of my said children shall not survive me and leave no descendant or descendants him, her or them surviving, that the share of said net proceeds mentioned in clause 6 above that would be paid to him, her or them if living, be paid to his, her or their surviving brother and sisters or their descendant or descendants, *per stirpes* and not per capita, in equal parts, the descendant or descendants of each child being paid the amount its or their father or mother would have been paid if living.

"*Clause 8*—I will and direct that in case either or any of my said children shall die after my death and during said term commencing at my death and ending fifteen (15) years after the first day of the next month of March after the date when this my last will and testament is admitted to probate, mentioned in clause 6 hereof, leaving no descendant or descendants him, her or them surviving, any payments that would have been made such last mentioned deceased child or children after the date or dates of the death or deaths of such last mentioned deceased child or children under clause 6 hereof, if he, she or they were living, shall be paid by said executor or his successors to my then surviving children and the descendant or descendants of such of my children, if any, who had prior to that time departed this life leaving a descendant or descendants then surviving, *per stirpes* and not per capita.

"*Clause 9*—I will and direct that at the expiration of said term commencing at my death and ending fifteen years after the first day of the next month of March after the date when this my last will and testament is admitted to probate, mentioned in clause 6 hereof, all of said real estate shall be sold by said executor or his successors in such manner and on such terms as he or they may deem best, and the money realized from such sale or sales paid said executor or his successors, in equal portions, to those of my said children then surviving, and to the descendant or descendants, if any, of any of the children who may then be dead, *per stirpes* and not per capita, or said executor or his successors may, at his or their discretion, at the end of said term commencing at my death and ending fifteen (15) years after the first day of the next month of March after the date when this my last will and testament is admitted to probate, mentioned in clause 6 hereof, divide and partition said real estate among those of my said children then surviving, and to the descendant or descendants, if any, of any of my children who may then be dead, by setting off or causing to be set off and conveying in fee simple to each of my said children then living, and to the descendant or descendants, if any, of each of my said children who are then dead, *per stirpes* and not per capita, an equal amount in value of said real estate, to be owned and held by the grantees thereafter in fee."

The bill charges that the provisions of the will creating the trust in Vespasian Warner are void, in contravention of the rule against creating perpetuities. A joint and several demurrer was interposed to the bill on behalf of Vespasian Warner, as executor and trustee under the will, and Flora Warner McDermott, and it was insisted in support thereof that by the terms of the will the legal title to the lands vested in the executor at the time of the death of the testator and that an equitable interest vested at the same time in the children of the deceased, and that there-

fore no partition could be had of said lands and that the bill should be dismissed for want of equity. The demurrer was overruled, and Flora Warner McDermott stood by it and was defaulted. An answer was filed by Vespasian Warner, personally and as executor and trustee, denying that the provisions of the will creating the trust were void for the reasons alleged in the bill or for any other reason. It was also insisted in the answer that no dower could be allotted to the widow out of certain lands which had been described in her original bill for dower, and which, by amendment, were afterwards stricken out of that bill.

The question presented for determination by the averment in the answer last above referred to is, whether a widow may file more than one suit for the purpose of having her dower assigned in the lands of her deceased husband, or whether she must include all of the lands in which she claims a dower right in one suit. Upon this question the circuit court held that her former suit for the assignment of dower, which did not include the lands involved in this bill, was no bar to her right to have her dower assigned in the lands which had been so stricken out of her original bill for dower.

The commissioners appointed to partition the land and to assign dower to Isabella Warner and to Mary J. Weldon, widow of Lawrence Weldon, who in his lifetime was a tenant in common with the testator, John Warner, in the particular lands in which dower was assigned in this proceeding, reported that the dower could not be assigned and set off in kind without manifest injury to the parties interested. The report was approved, and a decree was entered vesting title to the lands owned by the testator at his death in his four children, severally, as partitioned and divided by the commissioners, and directing a sale of the land in which dower could not be assigned or set off, as aforesaid, and that the widows have their respective dowers in the proceeds of the sale. It does not appear from the

record that either of said widows filed a written assent to
the sale of said lands. Neither of said widows has joined
in this writ of error, but the point is urged by Vespasian
Warner and Flora Warner McDermott that it was error
for the court to order a sale without the written assent
thereto of the widows aforesaid.

There are numerous errors assigned on this record, but
the questions presented may be considered under the fol-
lowing propositions: (1) Is the will of John Warner void
because it contravenes the rule against perpetuities? (2)
Can a widow who is entitled to dower in several different
tracts of land file a bill for the assignment of such dower
in a part of such lands and afterwards have dower as-
signed to her in the residue in a separate proceeding? (3)
Should the decree of the court ordering a sale of certain
tracts of land in which the widows of John Warner and
Lawrence Weldon had dower be reversed because there is
no written assent of said widows to said sale filed in this
cause? These questions will be considered in the order in
which they are stated above.

*First*—The question of the validity of the will of John
Warner is the one of controlling and paramount importance
in this cause. As already indicated, the court below held
that clauses 6, 7, 8 and 9 of the will violated the rule
against perpetuities. These clauses of the will direct what
disposition shall be made of the estate after fifteen years
from the first day of the next month of March after the
date when the will was admitted to probate. By the fourth
clause of the will the testator devised all of his property,
both real and personal, to his executor in fee simple, in
trust for the purposes specified in the sixth, seventh, eighth
and ninth clauses of the will. There is no limitation what-
ever as to when the legal title vests in the trustee under
clause 4. If any doubt existed as to the time when the
legal estate was intended to vest in the trustee under
clause 4, such doubt would be dispelled by the express di-

rection in clause 6 that "said executor, immediately upon my death, take possession of the real estate above devised to him, and that he, and his successors after him, for and during a term commencing at my death," etc.

The rule against perpetuities has reference to the time within which the title vests and has nothing to do with the postponement of the enjoyment or the duration of the title. An interest which begins within lives in being and twenty-one years thereafter is not within the rule although it may continue beyond the prescribed period. If it were otherwise, all fee simple estates would be bad. (Gray on Perpetuities, sec. 232; *Madison* v. *Larmon,* 170 Ill. 65; *Flanner* v. *Fellows,* 206 id. 136; *Johnson* v. *Preston,* 226 id. 447; *Armstrong* v. *Barber,* 239 id. 389.) There does not appear to be any ground whatever for the contention that the legal estate did not vest in the trustee, under the will, immediately upon the death of the testator. After the will was probated the letters testamentary would relate back to the date of the testator's death and validate acts done by the executor in the line of his duty before he qualified. 3 Redfield on Wills, *23; *Richards* v. *Pierce,* 44 Mich. 444; *Armstrong* v. *Barber, supra.*

The case of *Johnson* v. *Preston, supra,* is relied on by defendants in error in support of their contention. The will in that case devised the real estate to a trustee, "to have and to hold for the space of twenty-five years from and after the date of the probate of this will," and it was held that this language indicated that the title of the trustee was not to vest until the will was probated. There is no such language in the will before us applicable to the vesting of the estate in the trustee, and that case lends no support to defendants in error's contention that the estate did not vest in the trustee in the case at bar until after the probate of the will.

The contention of defendants in error that under the will there is a possibility that the equitable title might not

vest in the beneficiaries within the time prescribed by the rule against perpetuities presents a more serious question. The determination of this question depends upon whether the interest of the beneficiaries is a vested remainder or contingent upon their being alive when the time of distribution arrives. The controlling consideration in determining this question is to discover and give effect to the intention of the testator as expressed in the will, if it can be done without contravening the established rules of law. (*Bradsby* v. *Wallace,* 202 Ill. 239; *Pearson* v. *Hanson,* 230 id. 610; *Wardner* v. *Memorial Board,* 232 id. 606; *Armstrong* v. *Barber, supra.*) The law favors the vesting of estates, and in cases where the instrument is susceptible of two constructions the law inclines to favor the construction most favorable to the devisee or grantee, rather than the construction that would be against his interest. (*Kellett* v. *Shepard,* 139 Ill. 433.) Remainders will only be held to be contingent where the intention to create such interest is clearly manifested by the words of the instrument. (*Grimmer* v. *Friederich,* 164 Ill. 245.) Where a remainder is devised and the postponement of the enjoyment is for the convenience and benefit of the estate and not for reasons personal to the devisee, the remainder should be held to be vested. *Knight* v. *Pottgieser,* 176 Ill. 368; *Carter* v. *Carter,* 234 id. 507; *Armstrong* v. *Barber, supra.*

It will be noted that by clause 6 of the will the executor is directed to take immediate possession of the real estate devised, and "manage, control, rent, cultivate, keep in repair and improve the same as he or they may deem advisable," and after the expenses are paid the net proceeds and income from said real estate are to be paid to the children of the testator, or their descendants, in equal parts, *per stirpes* and not per capita. There is here an express devise to the testator's children of all of the proceeds and income from the real estate. It is a well established rule

that a devise of all of the rents and profits or income from real estate is a devise of the real estate itself. (*Carter* v. *Carter, supra;* 30 Am. & Eng. Ency. of Law,—2d ed.—786.) Taking the entire testamentary scheme into consideration, it is apparent that the testator intended the entire beneficial interest in his estate to vest in his children and the lineal descendants of such as might die before the period of distribution was reached. There is an absence of any purpose to give any other person any interest in or benefit from the estate, and the purpose in postponing the distribution was to give his children the benefit of the increase in the value of the real estate during the time the trust was running. There is no circumstance connected with the beneficiaries personally, such as minority or incompetency from other cause, suggested for the postponement of the final distribution. Manifestly, the testator believed that it would be to the advantage of the estate to allow it to remain as invested by him, in valuable farm lands, for a limited time rather than to have it divided or sold at the present time.

Under the authorities already cited we think it must be held that the equitable title vested in the testator's children at the time of his death. The provision in the will providing for the survivorship in case of the death of any of his children without leaving lineal descendants can only be regarded as a condition subsequent, upon the happening of which the vested interest would be divested. This construction is warranted by the language of the will and gives effect to and carries into execution the testator's intention. The will is not void either in the devise to the trustee of the fee simple title in trust, or in its provisions respecting the beneficial interests of his children.

Defendants in error contend that the devise to the trustee should be held void, as being contrary to public policy, because it places the trustee in a position where his duty may conflict with his personal interest. We cannot assent to this view. The most that can be said in support of this

point is, that the trustee might attempt to make an unfair division or partition among the heirs when the period of distribution arrives. It is a sufficient answer to this contention that the trustee could not use his official position to the detriment of the distributees without being guilty of such fraud and misconduct as would authorize a court of chancery to assume jurisdiction at the instance of the distributees and administer such remedies as to secure them from any possible injury in this regard. If any occasion shall arise making it necessary to do so, the courts can be appealed to to prevent any injury that may be apprehended from a violation by the trustee of either the letter or spirit of the powers conferred upon him. There is in all cases where property is intrusted to the hands of a trustee a possibility that the trustee may prove recreant to his duty, but this possibility has never been supposed to be a sufficient reason for declaring the trust invalid.

*Second*—Plaintiffs in error's second contention is, that the court erred in assigning the widow dower in certain lands which, though originally included in her bill to set aside the ante-nuptial contract and for the assignment of dower, were subsequently, by amendment, stricken out of said bill and are included in the present proceeding. This contention is based upon the assumption that a widow having the right to have her dower assigned in several tracts or parcels of land must include in one bill all of the lands in which she claims dower. No authority for this contention is cited by plaintiffs in error and we are aware of no principle of equity pleading upon which such contention can rest. It is not necessary in a bill for partition that all of the lands held by tenants in common should be included in one bill. Successive suits may be brought for different parcels of real estate, as the interests of the parties may require. That a widow who is entitled to dower in different parcels of real estate should forfeit the same unless she included all of the lands in one suit would seem to be a

highly technical and unreasonable rule.   An additional reason why this contention cannot be sustained is that it was not set up and relied on in the answer.   If the first suit for assignment of dower be relied on as a bar to the assignment of dower in the present proceeding, such former adjudication would have to be set up and relied on in the answer.   That was not done in this case.   There was no error committed by the court in assigning dower in the lands stricken out of the original bill.

*Third*—The last contention of plaintiffs in error is, that the court erred in ordering a sale of certain real estate without the written assent of the widows who were entitled to dower therein.   There are two satisfactory answers to this contention.   In the first place, the parties for whose benefit the statute relied on was passed are not complaining of the order of sale without their written assent; and in the second place, the widow is entitled to dower in all the lands whereof her deceased husband was seized of an estate of inheritance at any time during the marriage, unless the same has been relinquished in legal form.   There is no provision in the will of John Warner which the widow has accepted in lieu of her dower.   Under this situation her right to dower accrued immediately upon the death of her husband, and she is entitled to the same even though it may require a sale of real estate contrary to the directions in the will.   In other words, the rights of the devisees under the will must give way to the rights of the widow, under the statute, to have her dower assigned. Where a will makes a provision for the wife in lieu of her dower and she accepts such provision, her right to dower is gone; (*Cowdrey* v. *Hitchcock,* 103 Ill. 262;) but in the absence of some such provision in the will the widow's right to dower, under the statute, is to be treated as though no will had been made.   The postponement of the period of distribution to the devisees could not have the effect of

postponing the widow's right to dower. There was no error in the decree in this regard.

For the error in decreeing partition among the heirs of John Warner before the period of distribution arrived the decree of the circuit court is reversed and the cause remanded, with directions for other proceedings in accordance with the views herein expressed.

*Reversed and remanded, with directions.*